UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREG OPINSKI CONSTRUCTION, INC.**, a California Corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>**BRASWELL CONSTRUCTION, INC.** a California Corporation; **THE EXPLORER INSURANCE COMPANY**, an unknown entity; and DOES 1 through 40, inclusive,<br><br>            Defendants. | 1:09-cv-00641 LJO SKO<br><br>**MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION TO REDUCE ARBITRATION AWARD TO JUDGMENT (DOC. 59)** |

## I. INTRODUCTION

This is a contract dispute concerning construction of a duplex in Yosemite National Park (the "Park"). Defendant Braswell Construction, Inc., ("Braswell") operated as general contractor on the project under a September 27, 2007 prime contract with the Park in the amount of $782,271.00. Doc. 61, Ex. A at 1. On October 1, 2007, Braswell entered into a subcontract with Plaintiff Greg Opinski Construction, Inc., ("Opinski") in the amount of $567,946.00 to perform most of the work on the duplex. Compl. ¶ 15 & Ex. A (*see* Doc. 65). As is required under the Miller Act, 40 U.S.C. §§ 3133-3134[1], for any federal construction project costing more than $100,000.00, Braswell arranged for Defendant The Explorer Insurance Company ("Explorer") to issue a surety bond in the amount of $782,271.00. Compl., ¶ 21 & Ex. B (*see* Doc. 65).

Before the Court for decision is Opinski's motion to reduce to judgment against Braswell

---

[1] Plaintiffs repeatedly reference outdated Miller Act provisions, *e.g.* 40 U.S.C. §§ 270a-270f, which were repealed in 2002, well before execution of the contracts at issue in this case.

1

and Explorer an Arbitration Award issued against Braswell in the amount of $295,799.78. Docs. 59 & 60. Braswell failed to respond to the motion. Explorer opposes certain aspects of Opinski's demand. Doc. 62. Opinski replied. Doc. 63. The motion was originally set for hearing on November 14, 2011, but the hearing was vacated and the matter submitted for decision on the papers. *See* Doc. 64.

## II.  BACKGROUND

A number of disputes arose between Braswell and Opinski during the construction of the duplex, ending in Braswell's termination of Opinski in early 2009. Opinski filed the instant lawsuit on April 9, 2009, alleging Braswell breached the subcontract by failing to pay sums due Plaintiff under the contract and by improperly terminating the contract. *See* Compl. at ¶¶ 13-18. Opinski seeks the value of extra labor and materials provided in a quantum meruit claim. *Id*. at ¶¶ 27-32. Opinski also named Explorer as a Defendant in a separate cause of action seeking recovery on the Miller Act Payment Bond. *Id*. at ¶¶ 19-26. Braswell and Explorer filed separate Answers. Docs. 9 & 10. Since entering an appearance by filing an Answer, Explorer has been on notice of all proceedings in this case.

On August 18, 2009, Braswell filed a motion to stay the claims in this case pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, on the ground that the subcontract between Braswell and Opinski contained a mandatory arbitration provision. Docs. 18 & 19. Opinski opposed the motion for a stay, arguing that Braswell had waived the right to enforce the arbitration provision. Doc. 23. Although Braswell and Explorer were originally represented by separate counsel, at the time the motion to stay was filed both were represented by William Thompson, Esq. *See* Doc. 12. Explorer took no separate position in on the request for a stay. On November 10, 2009, Magistrate Judge Gary S. Austin stayed the case and ordered the parties to arbitration. Doc. 29.

The case proceeded to arbitration, with only Opinski and Braswell participating. (The

Arbitraton Award does not indicate any separate participation by Explorer in the Arbitration. *See* Doc. 61, Ex. A.)  In a detailed decision, the Arbitrator determined:

(1) Braswell improperly terminated Opinski (Doc. 61, Ex. A at 3-5);

(2) The undisputed contract balance is $109.726.74 (*id*. at 5);

(3) Braswell is entitled to $5,529.00 for proven offsets (*id*.);

(4) Opinski is entitled to $15,000.00 for additional supervision and costs incurred (*id*. at 5-6);

(5) Payment to Opinski for a single change order in the amount of $1,097.00 is allowed (*id*. at 6-7);

(6) The subcontract is expressly governed by California Law (*id*. at 6 (citing paragraph 35 of the subcontract));

(7) Because the contract is governed by California law, prompt payment penalties in the amount of $47,121.00, Calculated under California law, are owed to Opinski (*id*. at 7-8);

(8) Pursuant to the sub-contract's express term that the arbitrator may award attorney's costs and fees to the prevailing party, Opinski is owed $108,194.00 in attorney's fees and costs incurred during the course of the arbitration (*id*. at 8);

(9) Opinski is awarded interest on the portion of the total award that does not include prompt payment penalties ($228,488.00) at the rate of 10% from the date of the Arbitration award (6/22/11) (*id*. at 9);

(10) Finally, Opinski is entitled to continuing prompt payment penalties on $47,040.00 of unpaid progress payments at the rate of 2% per month from May 27, 2001 until paid (*id*. at 8-9).

On July 6, 2001, Opinski sent a demand letter to Explorer, seeking $295,799.78,

3

calculated as follows:

| | |
|---|---:|
| Arbitration Award: | |
| Contract balance | $109,727.00 |
| Braswell's Proven Offsets | ($5,529.00) |
| Opinski's additional supervision and costs | $15,000.00 |
| Change order costs awarded to Opinski | $1097.00 |
| Prompt payment penalties (under California Law) | $47,121.00 |
| Attorney's fees and costs re arbitration | $108,194.00 |
| Total | $275,610.00 |
| | |
| Post-Award Prompt Payment Penalties per method ordered by the Arbitrator | $1,536.64 |
| | |
| Post Award Interest on $228,488[2] ($62.60 per day), per method ordered by the Arbitrator | $1,439.80 |
| | |
| Pre-Arbitration Federal Case Attorney's Fees and Costs[3] | $17,213.34 |
| **Total:** | **$295,799.78** |

*See* Doc. 62 & Doc. 61, Ex. F.

On August 15, 2011, Explorer issued a check for $268,392.88, representing the balance of the above items, with two exceptions. First, in lieu of the $48,657.64 in prompt payment penalties demanded by Opinski ($47,121.00 pre-award prompt payment penalties awarded by the Arbitrator plus $1536.64 post-award prompt payment penalties calculated per the Arbitrator's instructions under California law), Explorer agreed to pay $14,131.28 in prompt payment penalties calculated pursuant to federal law (for a difference of $34,526.36). Second, in lieu of the $1,439.80 in post-award interest, per the Arbitrator's instructions, Explorer agreed to pay $22.60, calculated pursuant to federal law (for a difference of $1,417.20). Doc. 62. The total difference between Opinski's July 6, 2011 demand and Explorer's August 15, 2011 offer is

---

[2] The amount of the arbitration award, less the prompt payment penalties assigned by the Arbitrator.
[3] In addition to language permitting recovery of costs of arbitration, the subcontract contains a separate attorney's fees provision allowing for recovery by the prevailing party of a reasonable attorney's fee required to enforce rights under the subcontract. Doc. 65, Ex. A at ¶ 23.

4

$35,943.56 in prompt-payment penalties and post-award interest.[4]

Opinski applied Explorer's check to its demand in an entirely different manner. *See* Doc. 60 at 4. Contrary to Explorer's intent, Opinski applied Explorer's payment to pay off the pre-award prompt payment penalties and post-award interest demanded, as though there was no dispute over how those should be calculated, leaving the balance due allocated to the original Arbitration Award in the amount of $30,601.54. Based on this accounting, Opinski added a demand for post-award prompt payment penalties on this $30,601.54 "balance," totaling $1,774.80 at the time the motion was filed. Because Explorer intended for its check to be applied to pay the contract balance in full, Opinski's demand for additional post-award prompt payment penalties is not well founded and those penalties will not be allowed.

In addition, Opinski demands $8,877.50 in post-arbitration attorney's fees and costs, including the time spent prosecuting this motion to reduce the Arbitration Award to judgment. Explorer does not object to this demand.

### III. ANALYSIS

Plaintiff asserts that the entire Arbitration Award is binding upon both Braswell and Explorer. In moving to reduce the Arbitration Award to judgment, Plaintiff invokes California Code of Civil Procedure ("CCCP") § 1288, which permits a prevailing party to file a motion to confirm an arbitration award within four years following the date of service of a signed copy of the award on the opposing party. "If a petition [to confirm an arbitration award] is duly served and filed, the court shall confirm the award as made" unless the court corrects or vacates the award pursuant to the narrow grounds available under CCCP §§ 1286, 1286.2, 1286.4, 1286.6.

The Federal Arbitration Act ("FAA") requires a district court to enter judgment where

---

[4] Explorer paid $17,000.00, rather than $17,213.34, in satisfaction of the pre-arbitration attorney's fees demand. Opinski does not appear to be demanding the additional $213.34.

5

"the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration...." if "any party to the arbitration" applies "for an order confirming the award" within one year after the award is made. 9 U.S.C. § 9. Here, the subcontract specifically provides that "[j]udgment upon the award rendered by the arbitrator may[5] be entered in any court having jurisdiction thereof." Doc. 65, Ex. A at ¶ 22. As is the case under California's confirmation statute, the FAA requires confirmation of an arbitration award unless narrow grounds for correction or vacation are satisfied. *See* 9 U.S.C. §§ 10 (requirements for vacation), 11 (requirements for correction).

Plaintiff's motion to reduce the Arbitration Award to judgment was filed November 1, 2011, less than six months following the issuance of the Arbitration Award on June 22, 2011, well within the limitations period for either the state or federal statute. Doc. 61, Ex. A.

A.   **Confirmation of Award Against Braswell.**

Braswell has failed to oppose confirmation of the Arbitration Award, which was entered against Braswell on June 22, 2011. *See* Doc. 61, Ex. A at 8. Pursuant to either CCCP § 1288 or FAA § 9, Plaintiff is entitled to have the Award confirmed against Braswell.

B.   **Confirmation of Award and Against Explorer.**

Explorer opposes two aspects of the motion to reduce the Arbitration Award to judgment, maintaining that federal law, rather than state law, governs prompt payment penalties and post-judgment interest awards against Miller Act sureties. Opinski argues that state law applies

---

[5] Numerous courts have applied the FAA to contracts containing permissive language ("may be entered") rather than the obligatory language ("shall be entered") contained in FAA § 9. *See, e.g., Nationwide Mut. Ins. Co. v. Randall & Quilter Reinsurance Co.*, 2008 WL 207854, *3 (S.D. Ohio 2008); *Hyatt Hotel Regency Crystal City v. Nat'l Petroleum Mgmt. Ass'n*, 2008 WL 54308, *1 (E.D. Va. 2008); *Varnes v. Chrysler Financial Corp.*, 2007 WL 4125830, 2 (N.D. Ind. 2007); *Creekstone Farms Premium Beef, L.L.C. v. Suitt Const. Co., Inc.*, 2007 WL 2155659, *3 (D. Kan. 2007); *Stedman v. Great Am. Ins. Co.*, 2007 WL 1040367, *3 (D.N.D. 2007) (consent to American Arbitration Association rules providing "that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof" operates as consent to have judgment of the arbitration award entered in federal court).

6

because the arbitrator found that the subcontract provided that the dispute would be resolved pursuant to state law and applied state law to calculate prompt payment penalties and interest in the Award. Opinski essentially maintains that Explorer is bound by the arbitration award against Braswell.

### 1. Preclusive Effect of the Arbitration Award.

The parties touch upon but do not thoroughly discuss a key threshold issue: To what extent is an arbitration award against a principal binding upon the surety? The caselaw does not offer a clear answer. A line of federal cases, including one from the Ninth Circuit, addresses under what circumstances an arbitration award against a principal may have preclusive effect on a surety. Where a state court has confirmed an underlying arbitration award, full faith and credit demands that a court look to state res judicata principles to determine the effect of that prior judgment. For example, in *United States ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F. 2d 1150, 1151 (9th Cir. 1987), a subcontractor sued a Miller Act surety in federal court to recover on the Miller Act bond after obtaining confirmation in Alaska state court of an arbitrator's award establishing the principal's liability. The Ninth Circuit applied the full faith and credit statute, 28 U.S.C. § 1738, which requires that federal courts give preclusive effect to a state court judgment if the judgment would be preclusive in the rendering state jurisdiction. *Id*. at 1153. Under Alaska law, both parties (e.g., principals) and their privies may be bound by prior judgments. *Id*. In Alaska, in order for privity to exist, "the non-party must have notice and an opportunity to be heard; the procedure must insure the protection of the rights and interest of the non-party, and he must be adequately represented by the party." *Id*. (internal citations and quotations omitted). Because the surety in *Aurora* had actual notice of the state court action, tendered its defense to the principal, and used the same counsel as the principal, the Ninth Circuit found that "the surety cannot now complain that it was inadequately represented," even though it

7

was "not a named party in ... the arbitration and made no appearances." *Id*. at 1152-53.  Finding that Alaskan courts would give preclusive effect to the prior state court judgment, the Ninth Circuit found that the judgment had preclusive effect on the surety's liability under the Miller Act.  *Id*. at 1153.

Here, no state court confirmation has been obtained against Braswell, so *Aurora* is not directly analogous.  Nevertheless, some courts have given <u>unconfirmed</u> arbitration awards against general contractors preclusive effect in subsequent suits against sureties under the Miller Act.  *See United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp*., 995 F.2d 656, 661 (6th Cir. 1993).  In *Skip Kirchdorfer*, the Sixth Circuit found that a Miller Act surety was bound by an arbitrator's award against its principal, even though the surety was not named in the arbitration proceeding.  The Sixth Circuit emphasized that the principal and the surety had "an unusually close relationship ... thus making [the surety] far more aware than most sureties of the proceedings against their principal." *Id*. at 661.  The surety and the principal shared the same attorney, who was an officer of the principal corporation.  *Id*.  This finding was bolstered by the fact that Ohio courts, which governed the substantive legal issues in the case, "have consistently held that a party can be bound by an adverse decision against another party with whom the party is in privity." *Id*. (internal citations omitted).

Following *Skip Kirchdorfer*, a Maryland district court also found that res judicata bound a Miller Act surety to an unconfirmed arbitration award against its principal:

> Generally, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." *United States Postal Serv. v. Gregory*, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 84). In the case of Miller Act actions involving subcontractors, principals, and sureties, courts in other circuits have held that "a judgment against a principal conclusively establishes the liability of a surety, as long as the surety had notice of the proceedings against the principal." *United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp*., 995 F.2d 656, 661 (6th Cir. 1993) (citing *Frederick v. United States*, 386 F.2d 481, 485 n. 6 (5th Cir. 1967)).

8

*United States ex rel. MPA Construction, Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 942 (D. Md. 2004). *MPA Construction* then reasoned that an arbitration award against the principal would likely be enforceable against the surety under Maryland law. *Id*. at 942-43. *Aurora*, *Skip Kirchdorfer,* and *MPA Construction* stand for the proposition that a federal court should look to state law for guidance in determining whether an arbitration award against a principal based on a contract governed by state law is binding upon a Miller Act surety.[6]

In contrast, the Fifth Circuit has held that a Miller Act surety cannot be bound by a state court judgment against the principal, as this would "offend the congressional mandate" that "only federal courts may determine a surety's liability on a Miller Act bond." *U.S. Fidelity & Guaranty Co. v. Hendry Corp.*, 391 F.2d 13, 18 (5th Cir. 1968). *Hendry* has been extended to hold that an unconfirmed arbitration proceeding between a subcontractor and a prime contractor would not have preclusive effect against the prime contractor's Miller Act surety. *Pensacola Const. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306, 311–14 (W.D. La. 1988) ("If the surety were forced to defend his bond in every arbitration proceeding that his indemnitee might be involved in, he would lose the protection that Congress granted the Miller Act surety. The surety would face the possibility of inconsistent results in the different forums and might end up being made liable for more than the amount of the bond.").

Here, under either the *Hendry/Pensacola* or the *Aurora*/*Skip Kirchdorfer* lines of cases, the Arbitration award does not have preclusive effect upon Explorer. If the *Hendry/Pensicola Construction* rule applies, an arbitration award would be per se non-binding upon the surety, as

---

[6] *Skip Kirchdorfer* and *MPA Construction* fail to overtly decide whether federal precedent or incorporated state law governs the preclusive effect of an unconfirmed arbitration award against a Miller Act surety, choosing instead to apply both federal and state law in the alternative. *See U.S. ex rel. Frontier Constr., Inc. v. Tri-State Management Co.*, 262 F. Supp. 2d 893 (N.D. Ill. 2003) (discussing all possible sources of law in the alternative). As *Aurora*, an analogous Ninth Circuit case, clearly incorporates state law, *Skip Kirchdorfer* and *MPA Construction* are interpreted in light of *Aurora* as incorporating state law.

9

giving an arbitration award preclusive effect would conflict with Congressional intent.

*Aurora's* and *Skip Kirchdorfer's* reasoning incorporated the relevant body of state law (Ohio law in *Skip Kirchdorfer* and Alaska law *Aurora*). In California, as a general rule, a surety is bound to the same extent the principal is obligated to make a payment. *See U.S. Leasing Corp. v. DuPont*, 69 Cal. 2d 275, 290 (1968); *Bloom v. Bender*, 48 Cal. 2d 793, 803 (1957), *Atowich v. Zimmer*, 218 Cal. 763, 769 (1933). However, California Civil Code ("CCC") § 2855, passed in 1979, specifically provides that "[a]n arbitration award rendered against a principal alone shall not be, be deemed to be, or be utilized as, an award against his surety."

In *Liton General Engineering Contractor, Inc. v. United Pacific Insurance*, 16 Cal. App. 4th 577 (1993), the only California case to discuss § 2855 in any detail, a subcontractor filed suit in state court against both the prime contractor and its surety.[7] Because the subcontract contained an arbitration clause, the litigation was stayed while the subcontractor was compelled to arbitrate its claims against the prime contractor. The arbitrator awarded the subcontractor the entire amount of its claim plus interest, but without attorney's fees, as the subcontractor admitted the subcontract required each party to bear its own attorney's fees. *Id*. at 583. The subcontractor then moved for summary judgment against the surety, arguing that the surety was liable for attorney's fees Liton incurred in the arbitration under CCC § 3248, which provides that a surety must pay a reasonable attorney fee "in case suit is brought on the bond." *Id*. at 584. The *Liton* court rejected the surety's argument that § 2855 barred entry of a fee award, reasoning that § 2855 did not apply because Liton "did not seek to execute upon the judgment received in the arbitration" directly against the surety. Rather, Liton moved for summary judgment, a procedure which provided "ample opportunity for [the surety] to raise factual and legal defenses." *Id*. An arbitration award is admissible as evidence of the principal's liability, *see* Cal. Evid. Code §

---

[7] In *Liton*, a public works bond was required under state law.

10

1302; *All Bay Mill & Lumber Co. v. Surety Co.*, 208 Cal. App. 3d 11, 18 (1989), but is not dispositive of a claim against the surety. *Liton* stands for two relevant propositions: (1) an arbitration award against a principal does not have res judicata effect upon a surety in California; and (2) the surety must be given the opportunity to separately raise its own defenses.

Under California law, the Arbitration Award does not have preclusive effect upon Explorer.[8] *Liton* permits Explorer to raise independent defenses, which it has done here, arguing: (1) that California prompt payment penalties are inappropriate; and (2) that "post-judgment" interest is governed by federal law. Explorer's defenses are addressed below.

### 2. Objection to California Prompt Payment Penalties.

Explorer objects that a Miller Act surety cannot be required to pay prompt payment penalties under California law. In lieu of the $48,657.64 in prompt payment penalties demanded by Opinski ($47,121.00 pre-award prompt payment penalties awarded by the Arbitrator plus $1536.64 post-award prompt payment penalties calculated per the Arbitrator's instructions under California law), Explorer agreed to pay $14,131.28 in prompt payment penalties calculated pursuant to federal law (for a difference of $34,526.36).

---

[8] Opinski replies that Explorer waived any rights to argue that the award is not binding on the surety by paying most of the Award. Doc. 63 at 2. Opinski cites no authority for the proposition that payment of undisputed portions of an award waives a surety's right to dispute other aspects of the award.

Opinski also rejoins that because Braswell failed to oppose this motion, entitling Opinski to judgment against Braswell, that judgment, rather than the Arbitration Award, can be used to bind Explorer under California Civil Code § 2808 ("Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal, and he is not entitled to notice of the default of the principal, unless he is unable, by the exercise of reasonable diligence, to acquire information of such default, and the creditor has actual notice thereof."). *Id*. Opinski puts the cart before the horse. Judgment has not yet been entered against Braswell. Braswell's failure to oppose the instant motion to reduce the Arbitration Award to judgment was not known to any party until the deadline for filing oppositions passed. Opinski cannot transform the basis for its motion in its reply brief. Even if judgment had already been entered against Braswell by this Court, its res judicata effect on Explorer would be governed by federal preclusion rules, which Opinski does not discuss. Nor does it appear likely that CCC § 2808 would provide Opinski what it wants. *National Technical Systems v. Superior Court*, 97 Cal. App. 4th 415, 424 (2002), cited by Opinski as an example of the application of § 2808 suggests that the surety's liability under § 2808, extends only to moneys to which the subcontractor is entitled under the subcontract. The disputed items here are prompt payment penalties and the method of calculation of the interest rate. The latter is resolved in Opinski's favor on other grounds below. The former is a creature of statute and not provided for in the subcontract.

11

Explorer relies upon *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 122 (1974), for the proposition that because a Miller Act bond is a creature of federal statute, federal law governs the scope of the remedies afforded claimants against Miller Act sureties. In *F.D. Rich*, the Supreme Court held that the Miller Act did not incorporate state law on the recovery of attorney's fees:

> The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law. Neither respondent nor the court below offers any evidence of congressional intent to incorporate state law to govern such an important element of Miller Act litigation as liability for attorneys' fees.

*Id*. at 126-27. *See also United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206 (9th Cir. 2002)

Subsequent to the Supreme Court's ruling in *F.D. Rich*, Congress amended the Prompt Payment Act, 31 U.S.C. 3905(j), to provide:

> Except as provided in subsection (i) of this section, this section shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to a contractor or subcontractor in the event of a dispute involving late payment or nonpayment by a prime contractor or deficient subcontract performance or nonperformance by a subcontractor.

At least one court has found this provision legislatively overrule *F.D. Rich* to permit Miller Act sureties to be sued for state law late payment penalties. *See United States ex rel. Cal's A/C & Elec. v. Famous Const. Corp.*, 34 F. Supp. 2d 1042, 1043-44 (W.D. La. 1999).

The Ninth Circuit, however, has interpreted the Prompt Payment Act amendment differently. In *Didomenico v. North American Construction Corp.*, 94 Fed. Appx. 598 (9th Cir. 2004), the surety argued that penalties and attorneys' fees allowed under California law are not remedies permissible under the Miller Act. *See id.* at *599. In an unpublished decision, the Ninth Circuit agreed, reasoning:

> [F]ederal law, not state law, determines the remedies under the Miller Act. *F.D. Rich Co. v. Indus. Lumber Co.*, 417 U.S. 116 (1974); *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206 (9th Cir.2002). <u>Because

> the contract in this case did not provide for fees or penalties, Didomenico was not entitled to attorneys' fees or penalties as "sums justly due"[9] under the Miller Act. F.D. Rich, 417 U.S. at 126-27.
>
> [The subcontractor] argues that § 3905(j) of the Prompt Payment Act, 31 U.S.C. § 3905(j), incorporates state remedies as "sums justly due" under the Miller Act, effectively overruling *F.D. Rich*. This claim fails. <u>The plain language of § 3905(j) of the Prompt Payment Act allows supplemental state law claims against contractor. It does not incorporate state law remedies into the Prompt Payment Act or Miller Act as Miller Act remedies that can be recovered from the surety or Miller Act bond</u>. *See* 31 U.S.C. § 3905(j); *United States ex rel. Cal's A/C & Elec. v. The Famous Const. Corp.*, 220 F.3d 326, 328 (5th Cir. 2000).

*Id*. at *599-*600 (emphasis added).

Explorer has conceded that attorney's fees are owed Opinski because the subcontract between Braswell and Opinski so provides. However, the subcontract does not provide for penalties to be calculated under state law. Therefore, *Didomenico* counsels that such state law penalties are not to be imposed upon a Miller Act surety. Rather, any prompt payment penalties would be governed by 31 U.S.C. 3905(b), which requires government contractors to include in any subcontract the following prompt payment penalty terms:

> (b) Each construction contract awarded by an agency shall include a clause that requires the prime contractor to include in each subcontract for property or services entered into by the prime contractor and a subcontractor (including a material supplier) for the purpose of performing such construction contract--
>
>> (1) a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract; and
>>
>> (2) an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection--
>>
>>> (A) for the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and
>>>
>>> (B) <u>computed at the rate specified by section 3902(a) of this title</u>.

---

[9] *Didomenico* references the "sums justly due" language from the pre-2002 version of the Miller Act because the case was pending on appeal when the statute was amended. There is no reason to believe, however, that the reasoning of *Didomenico* does not apply with equal force to the amended version of the Miller Act.

(Emphasis added.)  Although it is undisputed that no such language was included in the subcontract between Braswell and Opinski, Explorer has nevertheless offered to pay prompt payment penalties according to this statutory scheme.

31 U.S.C. 3902(a) provides that prompt payment interest is computed "at the rate of interest established by the Secretary of the Treasurer and published in the Federal Register. According to Explorer, the applicable interest rate is 5.625% per annum (the rate as of February 2009, when the arbitrator found the subcontract was improperly terminated).  Applying this rate to the $104,198.00 contract balance the arbitrator found to be due at the date of improper termination, Explorer calculates that Opinski would be entitled to $16.06/day.  Explorer paid $14,131.28 in satisfaction of this obligation.  No further prompt payment penalties will be allowed against Explorer.  Opinski has obtained separate judgment against Braswell and may seek satisfaction from the prime contractor on the balance of the prompt payment penalties awarded by the arbitrator.

      **3.**      **<u>Objection to Applying California Interest Rates to Post-Arbitration Period.</u>**

Explorer also objects to applying California rates to calculate the interest due on the Arbitration Award.  In lieu of the $1,439.80 in post-award interest, per the Arbitrator's instructions, Explorer agreed to pay $22.60, calculated pursuant to federal law (for a difference of $1,417.20).

It is well established that the Miller Act incorporates state law on the issue of whether to award <u>prejudgment</u> interest.  *See United States for Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 922 (5th Cir. 1998); *United States ex rel. Intern Business Machines Corp. v. Hartford Fire Insurance Co.*, 112 F. Supp. 2d 1023, 1034 (D. Hawaii 2000).  It is also well established that federal interest rates control once judgment has been entered, even in

14

diversity cases. *See In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002) ("In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates while post-judgment interest is determined by federal law."). Here, Explorer assumes without discussion that the arbitrator's entry of the Arbitration Award constitutes a judgment for the purposes of triggering application of the federal interest rate. This assumption is belied by *Northrup Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988), cited by Explorer for another purpose. *Northrup* concerned an arbitration award that was vacated by a district judge but later reinstated by the Ninth Circuit. *Id*. At issue was "selecting the point at which postjudgment interest beg[an] to run." *Id*. at 1156. The Ninth Circuit considered two alternatives: the "original judgment" by the district court vacating the arbitration award, or the reinstatement by the Appellate Court. *Id*. For reasons that are not relevant here, the Ninth Circuit held that postjudgment interest began to run as of the date of the original judgment. *Id*. at 1156-57. More critically, the Ninth Circuit <u>never considered the entry of the arbitration award</u> to be the "judgment" for purposes of calculating post-judgment interest. *See also Gen. Elec. Co. v. Anson Stamping Co., Inc.*, 426 F. Supp. 2d 579, 597 (W.D. Ky. 2006) (citing *Northrup* for the proposition that federal interest rates do not apply to the post-award, prejudgment time period; rather post-judgment begins to run upon entry of judgment by the court). Judgment has yet to be entered in this case. Therefore, federal post-judgment interest rates have yet to become applicable. The California interest rate should be applied to the period between the entry of the Arbitration Award and Explorer's satisfaction of that award. Opinski's demand already applies the California interest rate for this period.

### IV. CONCLUSION AND ORDER

For the reasons set forth above, Opinski's motion to reduce the Arbitration Award is GRANTED IN PART AND DENIED IN PART.

(1) Opinski's additional demand for $1,774.80 in penalties is DENIED as to both Braswell and Explorer.

(2) Judgment shall be entered against Braswell for the full amount of the remaining demand, $295,799.78, plus $8,877.50 in attorney's fees associated with filing this motion for a total judgment of $304,677.28.  This judgment shall be offset by amounts already paid and to be paid by Explorer.

(2) Judgment shall be entered against Explorer for the full amount of the remaining demand, $295,799.78 plus $8,877.50 in attorney's fees associated with filing this motion, less $34,526.36 (the difference between the $47,121.00 pre-award prompt payment penalties awarded by the Arbitrator plus $1,536.64 post-award prompt payment penalties calculated per the Arbitrator's instructions under California law, less the $14,131.28 Explorer agreed to pay under federal law), for a total judgment of $270,150.92.  This judgment shall be offset by amounts already paid by Explorer.

**SO ORDERED**
**Dated:  November 17, 2011**

                                    **/s/ Lawrence J. O'Neill**
                                    **United States District Judge**